UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAY C. ROGERS,

           Plaintiff,

    v.

WEAVER, *et al.*,

           Defendants.

CASE NO. 2:23-cv-01160-JCC-GJL

AMENDED REPORT AND RECOMMENDATION

Noting Date: December 15, 2023

This matter is before the Court on referral from the District Court and on Defendants' Motion to Dismiss.[1] *See* Dkt. 20.

Plaintiff is *pro se* and currently housed at the King County Jail. He initiated this 42 U.S.C. § 1983 action against King County and two of its Jail officials for tampering with his legal mail and placing him in informal disciplinary punishment without due process. Dkt. 6. Defendants have moved to dismiss Plaintiff's Complaint because he failed to state a claim against any Defendant and they are entitled to qualified immunity. Dkt. 20.

---

[1] The original Report and Recommendation, issued on December 1, 2023, misidentified a Defendant. This Amended Report and Recommendation corrects that error. The Clerk is directed to strike the original Report and Recommendation.

AMENDED REPORT AND RECOMMENDATION - 1

1    For the reasons set forth below, the Court concludes that Plaintiff plausibly states a claim

2 for relief of First Amendment retaliation against Defendant Weaver, but that his remaining

3 claims fail as a matter of law. Accordingly, the Court recommends Defendants' Motion to

4 Dismiss (Dkt. 20) be **GRANTED IN PART** and **DENIED IN PART**.

5              I.    PROCEDURAL HISTORY

6    On August 17, 2023, the Court screened Plaintiff's proposed complaint and granted

7 Plaintiff's Motion to Proceed *In Forma Pauperis*, which allowed Plaintiff to file his Complaint.

8 *See* Dkt. 8. Defendants filed the instant Motion to Dismiss on October 13, 2023. Dkt. 20.

9 Plaintiff responded on November 1, 2023. Dkt. 23. Defendants filed their Reply on November 7,

10 2023. Dkt. 24.

11              II.    BACKGROUND

12    Plaintiff alleges that Defendants violated his First Amendment rights when they failed to

13 transmit Plaintiff's outgoing legal mail and violated his Fourteenth Amendment rights when

14 Defendant Weaver placed Plaintiff in the Jail's visitor booth as punishment for inquiring about

15 the missing mail. Dkt. 1 at 8–10.

16    Plaintiff provided Jail officials with four envelopes containing legal mail on July 20,

17 2023. Dkt. 1 at 8. Concerned that some of his mail was being lost or tampered with, Plaintiff

18 "asked the assigned unit officer if he could document that Plaintiff is providing him legal mail

19 addressed to the U.S. Federal Court" on July 26, 2023. *Id.* Plaintiff asserts that the Jail's policies

20 and procedures dictate that its officers document when they receive legal mail from an inmate.

21 *Id.* The officer on duty "did not want to be involved with documenting that he received legal

22 mail for Plaintiff, and said that he would notify [Defendant Weaver] to speak with Plaintiff." *Id.*

23

24

AMENDED REPORT AND RECOMMENDATION - 2

Later that day, Weaver approached Plaintiff while yelling and cursing at him, told Plaintiff to not ask officers to log his legal mail, and said, "if you do it again I will put you in the hole (segregation)." *Id.* at 9. Plaintiff attempted to elaborate his concerns about his legal mail, but Defendant Weaver repeated his threat to put Plaintiff in segregation and stated, "I can do whatever I want to do, I can put you anywhere in this jail." *Id.* at 10. Plaintiff then attempted to hand Weaver a written grievance about the legal mail, which Weaver refused to take, and allegedly said, "I have [had] enough of you," and told Plaintiff he was "going to visiting for a while" for "telling me how to do my job." *Id.* at 11.

Plaintiff alleges that the visiting booth is a small room used for attorney and family visits and that "there is no air, no toilet, nor water." *Id.* at 11. Further, Plaintiff "takes multiple medications that require Plaintiff to drink a lot of water, Plaintiff was dehydrated and hot for hours inside the visiting booth, and not provided water, nor allowed to use the bathroom." *Id.* at 12. Weaver left Plaintiff in the visiting booth and exited the facility. *Id.* at 11–12. Plaintiff was let out of the booth two hours later by an officer from a different shift. Dkt. 23 at 6, 18.

Plaintiff asserts that he did not violate Jail rules and never received an infraction but submitted his own grievance report regarding the incident on August 8, 2023. *Id*. Plaintiff argues that, pursuant to the Jail's policies and his Due Process rights, he should have received a written infraction and a hearing with the ability to call witnesses before being punished. *Id.*; Dkt. 1 at 12. He further alleges that King County's Department of Juvenile and Adult Detention has a policy and practice of using the visitor's booth as informal punishment in circumvention of these procedural requirements and even when the detainee has not committed any offense. Moreover, Plaintiff alleges Weaver's supervisor, Defendant Nance, failed to train Weaver on the rights of detainees. Dkt. 1 at 15.

### III. DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, courts accept as true a plaintiff's well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin,* 262 F.3d 871, 876–77 (9th Cir. 2001).

Courts liberally construe a *pro se* litigant's complaint and hold it to a less stringent standard than those drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). *Pro se* litigants should be granted leave to amend unless it is absolutely clear that the deficiencies cannot be cured by amendment. *See Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc).

Defendant moves for dismissal of Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) on the basis that Plaintiff has failed to state a claim under 42 U.S.C. § 1983. Dkt. 20. To state a claim for relief under § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional

right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

A.  **Claims against Weaver regarding Plaintiff's Legal Mail**

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995) (per curiam). Prisoners also have a right to meaningful access to the courts under the Due Process clause of the Fourteenth Amendment, which protects their ability to send and receive legal mail. *Gsouri v. Gentry*, No. 3:18-CV-5472 BHS-JRC, 2019 WL 4889790, at *6 (W.D. Wash. Aug. 8, 2019), *report and recommendation adopted*, No. C18-5472 BHS, 2019 WL 4200662 (W.D. Wash. Sept. 5, 2019).[2]

Plaintiff alleges that he attempted to send four legal mail envelopes from the Jail on July 20, 2023, but received no record that they left the facility. Dkt. 1 at 8. On July 26, when Plaintiff complained about this and requested that his outgoing mail be documented, Weaver refused. *Id.* at 8–9. Plaintiff fails to state a claim under § 1983 because he does not allege that Weaver refused to send or otherwise tampered with his mail, but only that Weaver refused to document its sending. *See* Dkt. 1 at 9. Plaintiff also fails to show any "actual injury" to court access caused by any interference. *Rogers v. Hardy*, No. C05-5231 FDB, 2007 WL 1821026, at *3 (W.D. Wash. June 22, 2007) (actual injury consists of "some specific instances in which an inmate was actually denied access to the courts" such as by missing a filing deadline) (quoting *Lewis v.*

---

[2] *See also Pink v. L.T. Lester*, 52 F.3d 73, 76 (4th Cir.1995) ("it matters not, for purposes of § 1983," whether such claims are "catalogued under the First or Fourteenth Amendment," as both require an "intentional" or "conscious" deprivation).

AMENDED REPORT AND RECOMMENDATION - 5

*Casey*, 518 U.S. 343, 349-52 (1996)). Accordingly, the Court recommends that these claims be dismissed with prejudice.

B. **First Amendment Retaliation Claim against Weaver**

"It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances. Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of clearly established law." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (internal quotations omitted). A "viable claim of First Amendment retaliation" in the prison context must include: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Id.* (citing *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir.2005)).

Here, Plaintiff allegedly sought to complain about outgoing legal mail that he believed was not sent by the Jail. Dkt. 1 at 8. Weaver responded by threatening to put Plaintiff in segregated confinement and stated that he could "put [Plaintiff] anywhere in this jail." *Id.* at 10. When Plaintiff pressed the issue and attempted to give Weaver the written grievance, Weaver allegedly placed Plaintiff in the visitor's booth for "telling [him] how to do [his] job." *Id.* at 11. Plaintiff has continuously asserted that he was not punished for a legitimate correctional goal, but instead because he attempted to complain about his legal mail and the grievance process. *See* Dkt. 1 at 10 (Plaintiff told Weaver that putting him in segregated confinement would not be legitimate because he had not broken any rules); *Id.* at 12 (Plaintiff never received an infraction

informing him that he broke a rule); Dkt. 23 at 18 (Plaintiff's August 8, 2023, grievance asserts that he "was punished for no legitimate reason").

The only prong of the *Rhodes* test not addressed by the Complaint is whether Weaver's actions chilled Plaintiff's exercise of his First Amendment rights. But because an objective standard governs this inquiry, Plaintiff need not show that "his speech was actually inhibited or suppressed," but rather that the adverse action at issue "would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Brodheim v. Cry*, 584 F.3d 1262 at 1271 (citations omitted) (emphasis in original).

Applying this standard, the Court concludes that a reasonable person would have been chilled by Weaver's threatened and actual confinement of Plaintiff. Plaintiff remained in the visiting booth for two hours, and Weaver's threats indicated that more severe punishment could follow if Plaintiff continued to seek redress for his complaints. *See Rhodes*, 408 F.3d at 568 n.11 ("[H]arm that is more than minimal will almost always have a chilling effect"); *Shepard v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016) (threats of administrative segregation could chill a person of ordinary firmness from complaining about officer misconduct) (quoting *Rhodes*, 408 F.3d at 569); *Wright v. Dir. of Corr.*, No. 04CV1873-IEG POR, 2011 WL 6729677 at *4 (S.D. Cal. 2011) (a prisoner threatened with administrative segregation may "be inhibited in his desire to pursue a grievance"); *Watison v. Carter*, 668 F.3d 1108, 1116 (9th Cir. 2012) (a guard's refusal to serve plaintiff one breakfast in retaliation for filing a grievance constituted chilling conduct).

Additionally, because retaliation against prisoners for exercising their right to file grievances is "a matter of clearly established law," *Brodheim*, 584 F.3d at 1269, Weaver is not

entitled to qualified immunity. The Court therefore recommends that Defendants' Motion be denied as to this claim.

C.     **Fourteenth Amendment Claim against Weaver**

A pretrial detainee's lawsuit under 42 U.S.C. § 1983 for inadequate care or treatment is evaluated under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition against cruel and unusual punishment. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Due Process Clause protects pretrial detainees from conditions of confinement that amount to punishment, and requires that detainees "are provided adequate shelter, food, sanitation, medical care, and personal safety." *Anthony v. Los Angeles Sheriff Dep't*, No. CV 19-00958-PA (DFM), 2019 WL 7938252, at *7 (C.D. Cal. Aug. 21, 2019) (quoting *Bell*, 441 U.S. at 535 n.16). To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Campbell v. Wexford Health Source Inc.*, No. CV2308063PCTJATDMF, 2023 WL 7413660, at *5 (D. Ariz. Nov. 9, 2023) (citing *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)). Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Gordon*, 888 F.3d at 1125. However, "a de minimis level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21. Moreover, a plaintiff must "prove more than negligence but less than subjective

1  intent—something akin to reckless disregard." *Byrd v. Tuolumne Cnty. Sheriffs*, No.
2  121CV00559SABPC, 2021 WL 11536777, at *4 (E.D. Cal. July 19, 2021) (citing *Castro*, 833
3  F.3d at 1071).

4        Here, Plaintiff's claim fails because he does not allege a substantial risk of serious harm.
5  Plaintiff remained in the visitor's booth for around two hours. Dkt. 23 at 18. He did not have
6  access to water or a toilet. *Id.* He alleges that he "takes multiple medications that require Plaintiff
7  to drink a lot of water" and that he was "dehydrated and hot for hours[.]" Dkt. 1 at 12. While
8  these conditions were uncomfortable, they do not, as alleged, rise to the level of a constitutional
9  violation. *See, e.g., Salinas v. Cnty. of Kern*, No. 118CV00235BAMPC, 2018 WL 5879703, at
10 *4 (E.D. Cal. Nov. 7, 2018) (deprivation of water and a restroom for nine hours did not place
11 plaintiff at a substantial risk of serious harm). Plaintiff also does not, for example, allege that
12 Weaver was aware of Plaintiff's medications and the way they could hasten dehydration. *See*
13 *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, No. CV 18-00453 HG-RT, 2019 WL
14 922232, at *6 (D. Haw. Feb. 25, 2019) (officers not aware of risk of harm, where they took
15 plaintiff's back brace and plaintiff did "not allege that Defendants knew of his back injury, either
16 from his medical records or directly from him, or that his injury was otherwise obvious as was
17 his need for the brace.").

18       Because Plaintiff does not allege any substantial harm which Weaver's conduct risked,
19 nor that Weaver was aware of any such risk, these allegations fail to state a claim upon which
20 relief can be granted. Therefore, the Court recommends that Plaintiff's Fourteenth Amendment
21 claim against Weaver be dismissed but that Plaintiff be granted leave to amend his Complaint. In
22 his amended complaint, Plaintiff must state specific facts, if any, demonstrating a substantial risk
23 of serious harm created by his detention in the visitor's booth.

24

D.     **Fourteenth Amendment Claims against King County**

Plaintiff also asserts *Monell* claims against King County for the alleged constitutional violations described above. Dkt. 1 at 14–15; Dkt. 23 at 15. Plaintiff asserts that "Sgt. Taylor Jr. and Captain Craw both whom are supervisor officers ratified that confining detainees to the visiting booth for hours is an acceptable and permissible form of disciplinary punishment[.]" Dkt. 23 at 15–16.[3]

But while Plaintiff plausibly alleges a First Amendment violation for Weaver's retaliatory conduct, he has failed to allege a Fourteenth Amendment claim regarding the conditions of his confinement in the visitor's booth. Because the statements by Taylor Jr. and Craw relate only to the latter (and do not indicate support for retaliation), they do not support a claim for *Monell* liability. *See Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 742 (9th Cir. 2020) (no *Monell* claim without an underlying constitutional violation). Even assuming an underlying violation, the fact that two other officers found detention in the visitor booth to be permissible does not demonstrate a practice "of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Miller v. Comm'r of the State of California Dep't of Corr.*, No. 121CV00176BAMPC, 2021 WL 11550435, at *3 (E.D. Cal. Apr. 21, 2021) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

Thus, Plaintiff's *Monell* claim fails because he alleges no King County policy or custom resulting in the deprivation of his constitutional rights. The Court recommends Plaintiff's Complaint be dismissed with prejudice as to this claim.

E.     **Claims against Nance and the Department of Juvenile and Adult Detention**

---

[3] Plaintiff cites to his August 8, 2023 grievance for this argument. Dkt. 23 at 18. While this grievance does not document any statements attributed to Taylor Jr. and Craw, Plaintiff notes in his Sur-reply that the reverse side of the grievance contains their written responses, which were not included in his filing. Dkt. 5 at 3. The Court accepts Plaintiff's description of their statements for purposes of deciding the present Motion.

AMENDED REPORT AND RECOMMENDATION - 10

1    Finally, Plaintiff alleges claims against King County's Department of Juvenile and Adult
2    Detention and its director, Allen Nance.
3    First, the Department of Juvenile and Adult Detention is not a proper defendant. *Lang v.*
4    *Washington*, No. C20-5057 BHS, 2020 WL 6799021, at *2 (W.D. Wash. Nov. 18, 2020) ("a
5    plaintiff must name the county or city itself as a party to the action, and not the particular
6    municipal department or facility where the alleged violation occurred") (quoting *Bradford v. City*
7    *of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008)).
8    Second, Plaintiff has not plausibly alleged supervisory liability against Nance for
9    Weaver's actions. Plaintiff must allege that Nance was personally involved with or otherwise had
10   a "sufficient causal connection" to Weaver's conduct. *Myers v. Small*, No. 08CV1810-WMC,
11   2013 WL 12184138, at *7 (S.D. Cal. Oct. 17, 2013), *aff'd sub nom. Myers v. Smalls*, 644 F.
12   App'x 752 (9th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1984)); *see McCurty*
13   *v. Lopez*, No. 21-CV-04600-YGR (PR), 2022 WL 16773547, at *3 (N.D. Cal. Jan. 7, 2022) (a
14   supervisor is generally "only liable for constitutional violations of his subordinates if the
15   supervisor participated in or directed the violations, or knew of the violations and failed to act to
16   prevent them") (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). Plaintiff's broad
17   and conclusory allegations that Nance failed to train Weaver, Dkt. 23 at 13, are insufficient to
18   establish such a link.
19   Thus, the Court recommends that Plaintiff's claims against Nance and the Department of
20   Adult and Juvenile Detention be dismissed with prejudice.
21   F.    **Leave to Amend Complaint**
22   Based on the complaint currently before the Court, Defendants are entitled to have their
23   Motion granted with respect to all claims except for Plaintiff's First Amendment retaliation
24

AMENDED REPORT AND RECOMMENDATION - 11

claim. However, the Ninth Circuit has established that pro se litigants bringing civil rights actions must be given an opportunity to amend their complaint to overcome deficiencies unless it is clear that such deficiencies cannot be overcome by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

The defects in Plaintiff's case as to his claims against King County, the Department of Adult and Juvenile Detention, and Allen Nance, *see* Dkt. 1 at 14–19, and his claims against Weaver regarding his outgoing legal mail, *see* Dkt. 1 at 8, cannot be cured because Plaintiff has not stated that these defendants caused any alleged constitutional violation. Therefore, the Court recommends that Defendants' Motion be granted as to these claims without leave to amend.

However, the defects in Plaintiff's Complaint as to his Fourteenth Amendment conditions of confinement claim against Weaver, *see* Dkt. 1 at 5-13, could be cured by amendment. Thus, the Court recommends that Defendants' Motion be granted but that Plaintiff be granted leave to amend this claim.

### IV.   CONCLUSION

For the reasons set forth above, the Court recommends that Defendants' Motion to Dismiss (Dkt. 20) be **GRANTED IN PART AND DENIED IN PART**. Specifically, all claims against King County, the Department of Adult and Juvenile Detention, and Allen Nance should be dismissed with prejudice. The Fourteenth Amendment claim against Weaver for the conditions of Plaintiff's confinement in the visitor booth should be dismissed without prejudice, and Plaintiff should be granted leave to amend this claim. Defendants' Motion should otherwise be denied with respect to Plaintiff's First Amendment retaliation claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.

R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on December 15, 2023, as noted in the caption.

Dated this 14th day of December, 2023.

Grady J. Leupold
United States Magistrate Judge