UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAY C. ROGERS,

                  Plaintiff,

     v.

RANDY WEAVER,

                  Defendant.

CASE NO. 2:23-cv-01160-JCC-GJL

REPORT AND RECOMMENDATION

NOTING DATE: **August 12, 2024**

This matter is on referral from the District Court and is before the Court on Defendant Randy Weaver's Motion for Summary Judgment.[1] Dkt. 79. Plaintiff Ray C. Rogers, proceeding *pro se* and *In Forma Pauperis*, filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983, challenging certain conditions of his pretrial detention at King County Jail ("KCJ"). Dkt. 6. The only claim remaining for consideration in this action is Plaintiff's First Amendment retaliation claim against Defendant Weaver in his individual capacity. Defendant Weaver now moves for summary judgment on that claim.

---

[1] The Clerk of Court is **DIRECTED** to update the case title to reflect Defendant Randy Weaver's full name.

1    Upon consideration of the parties' arguments and the relevant evidentiary record, the

2    undersigned concludes there are genuine factual disputes on the essential elements of Plaintiff's

3    claim. It is therefore recommended that the Motion for Summary Judgment (Dkt. 79) be

4    **DENIED** and this matter be set for trial.

5                                      **I.    BACKGROUND**

6    **A.    Plaintiff's Complaint**

7         The alleged facts and circumstances giving rise to Plaintiff's First Amendment retaliation

8    claim occurred on July 26, 2023. *Id.* at 5–13. Early that morning, Plaintiff allegedly initiated a

9    conversation with the security officer assigned to his unit about outgoing legal mail. *Id.* at 8.

10   Plaintiff informed the unit officer that he submitted four pieces of legal mail several days prior

11   but there was no record of his mail leaving the facility. *Id.* Not wanting another piece of legal

12   mail to go unrecorded, Plaintiff "asked the assigned unit officer if he could document that

13   Plaintiff is providing him legal mail…. Just [in] case this one comes up missing too[.]" *Id.*

14   According to Plaintiff, the unit officer on duty "did not want to be involved with documenting

15   that he received legal mail for Plaintiff and said that he would notify the [sergeant] to speak with

16   Plaintiff." *Id.*

17        Later that morning, Plaintiff alleges that Defendant Weaver—a sergeant at KCJ—walked

18   into Plaintiff's unit cursing and calling his name. *Id.* at 9. After informing Defendant Weaver that

19   he was present, Plaintiff started collecting documents for their discussion. *Id.* But Defendant

20   Weaver made clear that he did not want to see this paperwork. *Id.* Following this seemingly

21   brusque introduction, Defendant Weaver directed Plaintiff not to ask his unit officer to document

22   receipt of outgoing legal mail, adding "if you do it again[,] I will put you in the hole ([*i.e.*]

23   segregation)." *Id.*

24

REPORT AND RECOMMENDATION - 2

Plaintiff then attempted to explain why he believed it was important he be permitted to ask the unit officers to document his legal mail. *Id.* But Defendant Weaver would not listen but instead interrupted this explanation by asking Plaintiff "did you h[ear] what I said[?]" *Id.* Plaintiff insisted that he had a right to address legitimate concerns with his unit officer. *Id.* In return, Defendant Weaver repeated his threat that he would "put [Plaintiff] in the hole." *Id.* Plaintiff then asked for the reason he would be placed in the hole, and Defendant Weaver answered: "For wasting the officer['s] time." *Id.* at 10.

But Plaintiff disagreed, telling Defendant Weaver that he could not be punished for raising a legitimate concern. *Id.* To this, Defendant Weaver allegedly responded, "I can do whatever I want to do, I can put you anywhere in this jail." *Id.* at 10. Plaintiff conceded that Defendant Weaver had the authority to place him in the hole, but inquired as to whether the punishment would be legitimate given that Plaintiff was a pretrial detainee with constitutional rights. *Id.* Defendant Weaver agreed that Plaintiff had "some rights" but maintained that "I can do what I want[.] [T]his is jail, I will put you in the hole." *Id.*

At this point, Plaintiff alleges that Defendant Weaver began to walk away. *Id.* However, Plaintiff still wanted to submit a written grievance about his missing legal mail, so he asked Defendant Weaver to accept his grievance. *Id.* After Defendant Weaver refused, Plaintiff stated that grievances are supposed to be picked up each shift by the supervising sergeant. *Id.* To this, Defendant Weaver responded, "no they are not, and this is not my wing." *Id.* Defendant Weaver then added, "I have [had] enough of you, come on let's go," and explained that Plaintiff was "going to visiting for a while." *Id.* at 11. When Plaintiff inquired about the reason for this punishment, Defendant Weaver allegedly told him it was for "telling me how to do my job." *Id.*

REPORT AND RECOMMENDATION - 3

1  Defendant Weaver then placed Plaintiff in a visiting booth, which is a small room used

2  for attorney or family visits and, sometimes, to punish pretrial detainees. *Id.* at 11. Plaintiff

3  maintains that he did not violate any KCJ rules before he was placed in the visiting booth. *Id.* He

4  also states that he did not receive a written report of his infraction from that day, which he

5  believes would have been required under KCJ's disciplinary policies. *Id.* at 12.

6  A little over a week after the events outlined above, Plaintiff initiated the instant action,

7  asserting—among other things—that Defendant Weaver engaged in First Amendment retaliation

8  when he placed Plaintiff in KCJ's visitor booth as punishment for informally complaining about

9  the Jail's legal mail processes and attempting to submit a formal grievance. Dkt. 1; Dkt. 6 at 5–

10  13.

11  Though the time for engaging in discovery has not yet elapsed,[2] Defendant Weaver seeks

12  summary judgment on Plaintiff's First Amendment retaliation claim. Dkt. 79. Plaintiff filed two

13  Responses in opposition to summary judgment (the first of which was styled as a "Motion to

14  Strike and/or Deny Summary Judgment" but was subsequently converted to a responsive brief),

15  and Defendant Weaver filed a Reply in support. Dkts. 88, 93, 95, 97. As such, Defendant's

16  Motion for Summary Judgment is now fully briefed with the following evidence submitted for

17  consideration by the parties.

18  **B.    Defendant's Evidence**

19  Defendant Weaver submits three sworn Declarations, copies of an administrative

20  grievance submitted by Plaintiff, and certain KCJ policies to support his Motion for Summary

21  Judgment. Dkt. 79-3 (Williams Declaration); Dkt. 79-6 (Weaver Declaration); Dkt. 79-9

22  (Malima Declaration); Dkts. 79-4, 79-8 (Copies of Plaintiff's July 26, 2023 Grievance); Dkt. 79-

23

24  ---
[2] The discovery deadline is currently scheduled for August 30, 2024. Dkt. 63.

5 (Except of KCJ Inmate Information Handbook); Dkt. 79-7 (KCJ Policy 6.02.002 Re: Inmate Disciplinary System). Altogether, Defendant Weaver's evidence reasonably shows that he imposed a permissible on-site behavioral modification to preserve institutional order and discipline after Plaintiff became loud and argumentative and failed to follow certain KCJ policies.

In his own Declaration, Defendant Weaver attests that he could hear Plaintiff making demands for unit officers to sign for his legal documents as soon as he arrived at Plaintiff's unit on July 26, 2023. Dkt. 79-6 at 2. Defendant Weaver states that Plaintiff made his demands by "yelling at the passthr[ough]," which is "against policy," and that this went on for several hours. *Id.* When Defendant Weaver eventually approached Plaintiff, he testifies that Plaintiff "continued to argue and did not follow directions even though I told him he needed to." *Id.*

Defendant Weaver also states that he "initially did not intend to put [Plaintiff] in the visitor's booth, but he continued to be argumentative and did not follow directions." *Id.* After warning Plaintiff that he would be "re-housed" if he did not follow directions, Defendant Weaver placed Plaintiff in the visitor's booth, where he remained for less than two hours. *Id.* Defendant Weaver testifies that this sort of temporary segregation, referred to as "racking back," is permitted by KCJ Policy. *Id.* (citing Dkt. 79-7).

As for Plaintiff's informal complaints about unit officers signing for legal mail, Defendant Weaver states that he informed Plaintiff he "was not there for his legal mail and that no one was going to sign for it." *Id.* As for Plaintiff's attempt to submit a formal grievance, Defendant Weaver confirms that Plaintiff attempted to hand him paperwork and/or legal mail, but that "[he] was there because [Plaintiff] was being disruptive." *Id.*

1   Defendant Weaver also submits a Declaration from Officer Wilfred Malima, who was the

2   "deck" or unit officer Plaintiff initially spoke to about signing for his legal mail. Dkt. 79-9

3   (Malima Declaration). Officer Malima's Declaration provides additional background on

4   Plaintiff's concerns about the legal mail processes at KCJ. Specifically, Officer Malima attests

5   that Plaintiff previously shared concerns about his mail being stolen and filed an administrative

6   grievance, or "kite," requesting documentation for the status of his outgoing mail. *Id.* at 2.

7   Presumably in answer to this grievance, Plaintiff received a log of his outgoing mail on the

8   morning in question; after looking at the log, Plaintiff believed two entries for recent legal mail

9   were missing. *Id.* Officer Malima explains that the missing mail entries may have been caused by

10  information lags inherent to processing grievances. *Id.*

11  Nevertheless, Officer Malima attests that, after receiving the log of his outgoing mail,

12  Plaintiff "demanded and yelled that he wanted officers to wear body cameras to show when he

13  gave them his outgoing mail." *Id.* Plaintiff also "demanded" that Officer Malima "sign

14  something that stated that I received his mail." *Id.* But Officer Malima refused, explaining that

15  this was not required by KCJ policy, and, in any case, he did not know what happened to

16  Plaintiff's mail after he dropped it off for processing. *Id.* Officer Malima represents that Plaintiff

17  "repeatedly" demanded to speak to a sergeant. *Id.*

18  Officer Malima then spoke to Defendant Weaver about Plaintiff's complaints. *Id.* When

19  Defendant Weaver returned for an update, Officer Malima informed the Defendant that Plaintiff

20  was "still making the same demands, yelling, being disruptive, shouting through the passthrough

21  demanding to call the Sergeant." *Id.* Officer Malima represents that "[i]t is against disciplinary

22  policy to yell through the passthrough[,] it affects the discipline and order of the wing, and

23  potentially impacts inmates." *Id.* Officer Malima then states that Defendant Weaver approached

24

REPORT AND RECOMMENDATION - 6

1    Plaintiff's "cell door," which he opened from his position on the deck. *Id.* Though Officer

2    Malima did not leave his position on the deck, he reports that Plaintiff was subsequently

3    handcuffed and taken away from the unit. *Id.* at 3.

4    **C.    Plaintiff's Evidence**

5         Plaintiff submits two sworn Declarations in opposition to Defendant's Motion. Dkt. 88-1

6    ("First Declaration"); Dkt. 92 at 13–15 ("Second Declaration"). Plaintiff's Declarations focus

7    primarily on rebutting the Defendant's argument that he was punished for being loud and

8    violating Jail rules and, instead, posits that he was punished for raising legitimate concerns.

9         In his First Declaration, Plaintiff states he used a two-way intercom speaker—not the

10   passthrough—to engage in a "non-argumentative conversation" with Officer Malima, adding that

11   he "respectfully and politely" asked the Officer to document his outgoing legal mail. Dkt. 88-1 at

12   1. Plaintiff does not say whether he asked to speak to a sergeant but postulates that the Officer

13   was "either not sure and/or didn't want to be involved so he called a sergeant." *Id.*

14        Later that morning, when Plaintiff was on his bunk at the rear of an open dormitory unit,

15   Plaintiff states Defendant Weaver entered the unit while yelling for him. *Id.* at 2. In describing

16   the subsequent interaction with Defendant Weaver, Plaintiff repeats substantially the same

17   information alleged in his Complaint, which is summarized above. *Compare id.* at 2–4 *with* Dkt.

18   6 at 8–12. The First Declaration concludes with Plaintiff asserting that Defendant Weaver

19   knowingly lied in his sworn Declaration. Dkt. 88-1 at 4.

20        In his Second Declaration, Plaintiff attests that he did not yell, cause "any type of

21   disruption," or break any rules on July 26, 2023. Dkt. 92 at 13–14. To corroborate this claim, he

22   further attests that he was not informed of "any disruption to operations or security" he

23   supposedly caused. *Id.* at 13. Plaintiff claims that he was in an open dormitory unit when

24

REPORT AND RECOMMENDATION - 7

1    Defendant Weaver approached him that morning, which he believes is inconsistent with the

2    Defendant's statement that their interaction occurred in a "tank" and Officer Malima's claim that

3    he was behind a "cell door." *Id.* at 14 (referring to Dkt. 79-6 at 2 and Dkt. 79-9 at 2). He also

4    disputes Officer Malima's representations that Plaintiff yelled at unit officers using a

5    "passthrough" and that Plaintiff was "handcuffed" before taken out of the unit. *Id.* at 13

6    (referring to Dkt. 79-9 at 2–3). The remainder of Plaintiff's Second Declaration discusses his

7    belief that Defendant Weaver, along with others, have "committed conspiratorial acts to mislead,

8    deceive, and lie." *Id.* at 14.

9         Finally, Plaintiff argues that certain KCJ policies support his position. For example,

10   Plaintiff argues that KCJ security officers are required to follow certain policies when punishing

11   inmates. Dkt. 88 at 10; Dkt. 92 at 7. Although Plaintiff incorrectly states that a disciplinary

12   hearing was required for his punishment, he is correct that Defendant Weaver's evidence

13   showing compliance with applicable KCJ policies is lacking. Specifically, KCJ Policy

14   6.02.002(C) requires security officers who use "racking back" as an on-site behavioral

15   modification to annotate the inmate's specific behavior in the logbook and to document any rule

16   violation on a "Rule Infraction/Behavior Modification Report." Dkt. 79-7 at 3 (KCJ Policy

17   6.02.002). If either of these documents were completed for Plaintiff's punishment, neither is

18   submitted in support of the instant Motion.

19                              **II.        LEGAL STANDARDS**

20   **A.    Summary Judgment**

21        Summary judgment is appropriate when the "movant shows that there is no genuine

22   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

23   Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is

24

1  "whether the evidence presents a sufficient disagreement to require submission to a jury or

2  whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

3  251–52.

4      The moving party bears the initial burden of showing "that there is an absence of

5  evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

6  (1986). When the moving party does not bear the burden at trial, it can carry its initial burden by

7  presenting evidence that negates an essential element of the nonmoving party's case, or by

8  establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at

9  trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.

10  2000). Whereas, when the moving party bears the burden at trial, it can meet its initial burden by

11  presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the

12  nonmoving party; the evidence presented must establish beyond controversy every essential

13  element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888–89 (9th

14  Cir. 2003).

15      If the moving party, bearing the burden at trial or not, meets its initial responsibility, the

16  burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial.

17  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Genuine

18  disputes are those for which the evidence is such that a "reasonable jury could return a verdict

19  for the nonmoving party." *Anderson*, 477 U.S. at 248. Material facts are those which might affect

20  the outcome of the suit under governing law. *Id.*

21      A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252.

22  Likewise, assertions based merely on the nonmoving party's belief are insufficient to oppose

23  summary judgment, as are unsupported conjecture and conclusory allegations. *Hernandez v.*

24

1   *Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). In ruling on a motion for summary

2   judgment, the court must draw all reasonable inferences in favor of the nonmoving party,

3   *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and it may not *weigh the evidence* or *make*

4   *credibility determinations*, *Anderson*, 477 U.S. at 248.

5   **B.    Section 1983**

6          To succeed under 42 U.S.C. § 1983, a plaintiff must prove that: (l) the conduct

7   complained of was committed by a person acting under color of state law and (2) the conduct

8   deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United

9   States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v.*

10  *Williams*, 474 U.S. 327 (1986). The causation requirement of § 1983 is satisfied only if a

11  plaintiff demonstrates that their constitutional injury was the result of a defendant committing an

12  affirmative act, participating in another's affirmative act, or failing to perform an act they were

13  legally required to do. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

14  **C.    First Amendment Retaliation**

15         As for the specific constructional injury at issue here: "It is well-established that, among

16  the rights they retain, prisoners have a First Amendment right to file prison grievances.

17  Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and

18  [is] prohibited as a matter of clearly established law." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th

19  Cir. 2009) (internal quotations omitted). The elements of a First Amendment retaliation claim

20  arising in the prison context include: (1) a state actor took an adverse action against an inmate (2)

21  because of (3) the inmate's protected conduct; (4) the adverse action, viewed objectively, would

22  chill an inmate's exercise of their First Amendment rights; and, finally, (5) the adverse action did

23

24

1  not reasonably advance a legitimate correctional goal. *Id.* (citing *Rhodes v. Robinson*, 408 F.3d

2  559, 567–68 (9th Cir. 2005)).

3  **D.      Qualified Immunity**

4      To survive summary judgment, Plaintiff must also defeat qualified immunity, which

5  Defendant Weaver asserts as an affirmative defense to this individual-capacity suit. Although the

6  Court found that Defendant Weaver was not entitled to qualified immunity at the pleadings

7  stage, it must address this issue anew based on the record at summary judgment.

8      "Qualified immunity shields government officials from civil liability unless a plaintiff

9  establishes that: (1) the official violated a constitutional right; and (2) that right was 'clearly

10  established' at the time of the challenged conduct, such that 'every reasonable official' would

11  have understood that what he is doing violates that right." *Morales v. Fry*, 873 F.3d 817, 821 (9th

12  Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). When qualified immunity is

13  reviewed in the context of a defense motion for summary judgment, the evidence must be

14  considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v.*

15  *Cotton*, 572 U.S. 650, 657 (2014) (per curiam). Summary judgment is not appropriate where

16  genuine issues of material fact prevent a determination of qualified immunity. *Bonivert v. City of*

17  *Clarkston*, 883 F.3d 865, 871–72 (9th Cir. 2018).

18      The Court may analyze the two prongs of qualified immunity in either order. *Pearson v.*

19  *Callahan*, 555 U.S. 223, 236 (2009). With respect to the second prong, "[t]hough the

20  constitutional right must be clearly established such that 'a reasonable official would understand

21  that what he is doing violates that right,'… '[t]here need not be a case dealing with these

22  particular facts to find [the officer's] conduct unreasonable.'" *Scott v. Cnty. of San Bernardino*,

23

24

903 F.3d 943, 951 (9th Cir. 2018) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 910 (9th Cir. 2003)).

## III.    DISCUSSION

In his Motion, Defendant Weaver argues he is entitled to summary judgment because Plaintiff cannot show there is a genuine issue of material fact on essential elements of his First Amendment retaliation claim and, in any case, Plaintiff has failed to show Defendant Weaver violated his clearly established rights. Dkt. 79. The Court does not agree.

As previously stated, prisoners have a clearly established right to be free from retaliation for engaging in conduct protected by the First Amendment. *See Brodheim*, 584 F.3d at 1269; *see also* Dkts. 27, 48. Thus, the following inquiry focuses the existence of a genuine factual dispute in the first prong of qualified immunity, which runs parallel to the merits analysis for Plaintiff's claim (*i.e.*, whether he suffered First Amendment retaliation at the hands of Defendant Weaver).[3]

## A.    The State-Actor and Adverse-Action Elements of Plaintiff's Claim are Met

The Court begins with the first and fourth elements of a First Amendment retaliation claim, which require that an adverse action be taken by a state actor.

It is undisputed that Defendant Weaver is a state actor and that he placed Plaintiff in the visiting booth for approximately two hours. *See* Dkt. 79-6 (Weaver Declaration). Although Defendant argues this action was not motivated by Plaintiff's protected conduct and that it was justified by a legitimate correctional goal, these arguments have no bearing on whether the

---

[3] The Court briefly addresses Plaintiff's argument that, under the law of the case doctrine, the Court is bound by its prior determination that Defendant Weaver is not entitled to qualified immunity. Dkt. 88 at 2–5, 7–8. This determination was made at the pleadings stage, and qualified immunity involves a mixed question of law and fact. *See generally Morales*, 873 F.3d at 821–25. So, while the Court is bound by its prior legal conclusions in this case (*e.g.,* that Plaintiff has a clearly established right to be free from First Amendment retaliation), its prior decision about the sufficiency of Plaintiff's factual allegations does not control the Court's assessment of the evidence at summary judgment, nor would it control the outcome at trial.

1    Defendant's conduct was an adverse action capable of chilling a reasonable inmate's First

2    Amendment rights. Defendant Weaver also relies on a sworn Declaration from KCJ's record

3    custodian Andrea Williams to argue that the punishment imposed on July 26, 2023, was not an

4    adverse action because it did not actually deter Plaintiff from filing subsequent grievances. Dkt.

5    79-3; see also Dkt. 79 at 10–11. However, Defendant Weaver misapprehends the inquiry for

6    adverse actions, which focuses on the how a reasonable person would have responded as

7    opposed to the plaintiff's actual response.

8          On this point, the Court has previously concluded that:

9          [A] reasonable person would have been chilled by Weaver's threatened and actual
          confinement of Plaintiff. Plaintiff remained in the visiting booth for two hours, and
10         Weaver's threats indicated that more severe punishment could follow if Plaintiff
          continued to seek redress for his complaints. *See Rhodes*, 408 F.3d at 568 n.11
11         ("[H]arm that is more than minimal will almost always have a chilling effect");
          *Shepard v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016) (threats of administrative
12         segregation could chill a person of ordinary firmness from complaining about
          officer misconduct) (quoting *Rhodes*, 408 F.3d at 569); *Wright v. Dir. of Corr.*, No.
13         04CV1873-IEG POR, 2011 WL 6729677 at *4 (S.D. Cal. 2011) (a prisoner
          threatened with administrative segregation may "be inhibited in his desire to pursue
14         a grievance"); *Watison v. Carter*, 668 F.3d 1108, 1116 (9th Cir. 2012) (a guard's
          refusal to serve plaintiff one breakfast in retaliation for filing a grievance
15         constituted chilling conduct).

16    Dkt. 27 at 7; *see also* Dkt. 48. Because the relevant evidence presented at summary judgment is

17    consistent with the factual allegations considered at the pleadings stage, the Court finds no

18    reason to depart from its earlier conclusion that elements one and four are satisfied in this case.

19    **B.    The Protected-Conduct Element is also Met for Summary Judgment Purposes**

20          Next, Plaintiff's evidence is sufficient to show he engaged in at least one form of

21    protected conduct (element three) before he was placed in the visiting booth. The Ninth Circuit

22    has made clear that using prison grievance procedure constitutes "protected conduct" for the

23    purposes of a First Amendment retaliation claim. *See Rhodes v. Robinson*, 408 F.3d 559, 567

24    (9th Cir. 2005); *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (those in custody may not be

1    retaliated against for use of grievance system); *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir.

2    1995) (individuals may not be penalized for exercising the right of redress of grievances).

3    Likewise, attempting to raise formal grievances and raising informal complaints—either verbally

4    or in writing—both fall within the purview of a prisoner's constitutionally protected right to file

5    grievances. *See Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (citation omitted).

6         Here, Plaintiff submits evidence showing that (1) he repeatedly raised informal

7    complaints about the Jail's mail processes and (2) he attempted to submit a formal grievance

8    about his lost mail to Defendant Weaver. Dkt. 88-1 at 2 (Plaintiff's First Declaration). First,

9    Defendant Weaver's evidence is largely consistent with Plaintiff's representations about raising

10   informal complaints. In his Declaration, Defendant Weaver testifies that he could hear Plaintiff

11   complaining as soon as he arrived in his unit and, later that day, the Defendant spoke to Plaintiff

12   about the substance of his informal complaints. Dkt. 79-6 at 2 (Weaver Declaration). Also,

13   Defendant Malima's Declaration goes into significant detail about Plaintiff's informal

14   complaints. Dkt. 79-9 at 1–2 (Malima Declaration). As for Plaintiff's attempt to submit a formal

15   grievance, Defendant Weaver acknowledges that Plaintiff tried to hand him a document, but he

16   did not testify about the nature of that document. Dkt. 79-6 at 2 (Weaver Declaration). In any

17   case, Plaintiff's evidence about engaging in both forms of protected conduct is sufficient to meet

18   his burden on the third element of his claim at this stage.

19   **C.    Genuine Issues of Material Fact Exist as to the Remaining Elements**

20        Thus, only elements two and five remain for consideration. Because these are essential

21   elements of his claim, Plaintiff must show there are genuine factual disputes about whether

22   Defendant Weaver placed him in the visiting booth "because of" his protected conduct (element

23

24

1  two) and whether, in doing so, the Defendant reasonably advanced a legitimate correctional goal

2  (element five).

3        To satisfy the "because of" causation requirement in element two, there must be a

4  genuine factual dispute as to whether Plaintiff's protected conduct was the substantial or

5  motivating factor behind Defendant Weaver's decision to place him in the visiting room. *See Mt.*

6  *Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286–87 (1977); *Brodheim,* 584 F.3d

7  at 1271.

8        With respect to the fifth element, "the preservation of internal order and discipline,

9  maintenance of institutional security, and rehabilitation of prisoners" have long been recognized

10  as legitimate goals of correctional institutions. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.

11  1985). But this is not an exhaustive list, and when assessing legitimate correctional goals, the

12  Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of

13  proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*,

14  65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

15        Even so, not every action a prison official takes will reasonably advance a legitimate

16  goal. *See Rizzo*, 778 F.2d at 532 (state action limiting speech "must be no greater than is

17  necessary to protect the particular governmental interest involved"). For example, in *Jones v.*

18  *Williams,* the Ninth Circuit reversed a lower court's summary judgment decision after finding

19  that a genuine issue of fact existed as to whether a disciplinary action furthered a legitimate

20  penological goal, 91 F.3d 1023, 1035–36 (9th Cir. 2015). The prisoner plaintiff in *Jones*

21  submitted evidence showing that he acted nonthreateningly when confronting a security officer

22  with informal complaints and intentions to sue. *Id.* at 1036. The Circuit Court found this

23  evidence sufficient to create a jury question about whether the plaintiff posed a sufficient

24

REPORT AND RECOMMENDATION - 15

security concern to justify the security officer's punitive response. *Id.* It then made clear that "a prisoner's impolitic choice of words does not categorically justify punitive action by prison officials" when such action is capable of chilling protected conduct. *Id.* (quotations and citations omitted).

Here, Defendant Weaver and Officer Malima testify that Plaintiff was being loud and disruptive while sharing his grievances. Dkt. 79-6 at 2 (Weaver Declaration); Dkt. 79-9 at 2–3 (Malima Declaration). They also testify that Plaintiff used a "passthrough" to make his verbal complaints, which is a violation of Jail rules. Dkt. 79-6 at 2 (Weaver Declaration); Dkt. 79-9 at 2 (Malima Declaration). Because of Plaintiff's disruptive conduct and his violation of a Jail rule, Defendant Weaver states that temporary segregation was a necessary and permissible means to restore order and discipline.

As noted above, placing an inmate in temporary segregation, referred to as "racking back," is a permissible on-site behavioral modification designed to "address security concerns or to curtail/contain improper behavior." *See* Dkt. 79-7 at 3 (KCJ Policy 6.02.002). Altogether, this evidence could support Defendant's theory that it was the *way* Plaintiff complained—not the act of complaining itself—that was the motivation behind Defendant Weaver's decision to place Plaintiff in temporary segregation and that the chosen punishment reasonably advanced the legitimate penological goal of maintaining order and discipline.[4]

In response, Plaintiff submits evidence rebutting two critical components of the Defendant's theory. In his Declarations, Plaintiff maintains that (1) he did not yell or cause a

---

[4] In his Motion, Defendant also argues that, if Plaintiff's conduct went unchecked, then it would necessarily "increase[] the risk [that] the remaining 80 to 160 inmates in the area will behave similarly and cause disruptions." Dkt. 79 at 10. As this argument is unaccompanied by evidentiary support, it will not be considered. *Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda and oral argument are not evidence….").

disruption and (2) he did not use the passthrough or violate any other KCJ rules. Dkt. 88-1 at 1–4 (First Declaration); Dkt. 92 at 13 (Second Declaration). Instead, Plaintiff testifies under penalty of perjury that he "respectfully and politely" shared his complaints and spoke to Officer Malima through an "intercom speaker." Dkt. 88-1 at 1–2 (First Declaration); Dkt. 92 at 13 (Second Declaration); *see also* Dkt. 92 at 4 (explaining that an intercom speaker and passthrough are distinct). These representations are consistent with those offered in Plaintiff's pleadings in this case and in his administrative grievance submitted at KCJ. Both documents were prepared soon after the events at issue and provide that Plaintiff merely sought to raise legitimate concerns and was punished despite violating no KCJ rules. *See* Dkt. 6 at 6–12; Dkts. 79-4, 79-8 (Copies of Plaintiff's July 26, 2023 Grievance).

Finally, there are several weaknesses in Defendant Weaver's explanation that Plaintiff was punished, at least in part, for using the passthrough in violation KCJ rules. First, this explanation was seemingly raised for the first time in this litigation. No mention of a rule violation was given in response to Plaintiff's administrative grievance; instead, the explanation provided for his punishment was that he was "being loud by arguing with [the sergeant] over the grievance pickups." Dkts. 79-4, 79-8 (Copies of Plaintiff's July 26, 2023 Grievance). Next, Defendant Weaver also provides no evidence showing that he completed a report for Plaintiff's alleged rule violation or that he recorded *any reason* for Plaintiff's on-site behavioral modification in the daily logbook as required by KCJ Policy. Dkt. 79-7 at 3 (KCJ Policy 6.02.002). Last, in his own Declaration, Defendant Weaver states that he could hear Plaintiff using the passthrough when he arrived at the unit but asserts that his intent to punish Plaintiff did not materialize until later in their interaction. Dkt. 79-6 at 2 (Weaver Declaration) ("I initially did not intend to put him in the visitor's booth...."). While these weaknesses are certainly not

dispositive of whether Plaintiff's alleged rule violation formed part of the Defendant's motivation, they illustrate the existence of genuine factual disputes in the record at summary judgment.

Thus, this case squarely comes down to a credibility determination: if Plaintiff is believed, then a reasonable factfinder could conclude that Defendant Weaver engaged in unlawful retaliation by punishing Plaintiff for calmly engaging in protected conduct, which advances no legitimate penological goal. *See Jones*, 91 F.3d at 1035–36. If, on the other hand, Defendant Weaver and Officer Malima are found to be credible, it reasonably follows that Defendant Weaver made a permissible on-site behavioral modification to quell Plaintiff's disruptive conduct and prevent him from further violating Jail rules thereby advancing legitimate penological goals. *See Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). Such credibility determinations cannot be resolved at summary judgment and must be made by a factfinder at trial. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

Accordingly, genuine issues of fact exist as to whether Plaintiff was punished "because of" his protective conduct and whether his punishment reasonably advanced a legitimate penological goal. Because genuine issues of fact exist as to these essential elements of Plaintiff's claim, Defendant Weaver is not entitled to qualified immunity and Plaintiff's First Amendment retaliation claim withstands summary judgment.

## IV.    CONCLUSION

For the above-stated reasons, the undersigned recommends that Defendant's Motion for Summary Judgment (Dkt. 79) be **DENIED** and that this matter be set for trial.

REPORT AND RECOMMENDATION - 18

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **August 12, 2024,** as noted in the caption.

Dated this 26th day of July, 2024.

Grady J. Leupold
United States Magistrate Judge