THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAY C. ROGERS,<br><br>               Plaintiff,<br><br>     v.<br><br>RANDY WEAVER,<br><br>               Defendant. | CASE NO. C23-1160-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 79), the Report and Recommendation ("R&R") of the Honorable Grady J. Leupold, United States Magistrate Judge (Dkt. No. 98), and Defendant's objections to the R&R (Dkt. No. 101). Having thoroughly considered the briefing and the relevant record, the Court hereby OVERRULES the objections, ADOPTS the R&R, and DENIES Defendant's motion for the reasons explained herein.

I.      BACKGROUND

The R&R describes the background of this case in detail. (*See* Dkt. No. 98 at 2–8.) According to the R&R, Plaintiff Ray Rogers filed a prisoner civil rights complaint asserting a First Amendment retaliation claim against Defendant Randy Weaver, a sergeant at King County Jail ("KCJ"), where Plaintiff was held pending trial. (*See id.* at 2, 4.)

According to Plaintiff, on July 26, 2023, he had a conversation with a junior correctional

officer about the status of his outgoing legal mail. (*Id.*) Plaintiff was concerned because there was no record of some of his mail leaving KCJ. (*Id.*) The parties dispute the medium and tone of this interaction. Plaintiff attests that he "respectfully and politely" used a two-way intercom. (*See id.* at 7) (quoting Dkt. No. 88-1 at 1). Sergeant Weaver, on the other hand, attests that Plaintiff was "yelling at the passthr[ough]" in the unit, which is against KCJ policy. (*See* Dkt. No. 98 at 5) (quoting Dkt. No. 79-6 at 2).

Plaintiff next alleges that Sergeant Weaver came into his unit and told him to stop asking about his legal mail. (Dkt. No. 98 at 2.) He also allegedly threatened Plaintiff multiple times, including that if he continued to complain, Plaintiff would be placed in segregation. (*Id.* at 2–3.) Nevertheless, says Plaintiff, he continued to ask about his mail, referenced the KCJ grievance policy, and attempted to submit a written grievance. (*Id.* at 3.) At this point, Sergeant Weaver allegedly confined Plaintiff in segregation (a visiting booth) for two hours. (*Id.* at 4.)

Plaintiff filed an administrative grievance at KCJ, which was denied. (Dkt. No. 79-4 at 3.) Plaintiff then filed the instant lawsuit *pro se* against multiple parties under 42 U.S.C. § 1983. (*See* Dkt. No. 98 at 4.) All parties except for Sergeant Weaver have been dismissed. (*See* Dkt. No. 48 at 2.)

Sergeant Weaver moved for summary judgment on the grounds that Plaintiff's allegations fail to establish a First Amendment retaliation claim. (Dkt. No. 70 at 9–12.) Moreover, according to Sergeant Weaver, he is entitled to qualified immunity. (*Id.* at 12–14.) Judge Leupold issued an R&R rejecting Defendant's arguments and recommending that summary judgment be denied. (*See generally* Dkt. No. 98.) Sergeant Weaver filed timely objections, (Dkt. No. 101), which focus on several substantive issues considered below.

## II.    DISCUSSION

### A.    Legal Standards

This Court reviews *de novo* those specific portions of an R&R to which a party objects. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). This allows the Court to "focus attention on

those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). If a party did not articulate an argument prior to its objections, it will not be reviewed under the same standard. *See U.S. v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) ("[A]n unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never seasonably raised before the magistrate."). So here, Sergeant Weaver needed to raise arguments prior to the magistrate's recommendation on his motion for summary judgment.

The Court may only grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It does not weigh the evidence nor make credibility determinations. *Id.* at 249. The party moving for summary judgment bears the initial burden of showing "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once a motion for summary judgment is properly made and supported, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

Sergeant Weaver makes three specific objections to the R&R, each on First Amendment grounds: Plaintiff did not engage in protected First Amendment conduct; even if he had, that conduct did not cause Sergeant Weaver's allegedly retaliatory response; and, regardless, he had legitimate penological objectives for his actions. (Dkt. No. 101 at 1–4.) Sergeant Weaver also re-raises his qualified immunity defense. (*Id.* at 4). Each objection is addressed, in turn, below.

### B.    First Amendment Retaliation

In the prison context, a First Amendment retaliation claim requires five elements: (1) An adverse action by a state actor against a prisoner (2) caused by (3) the prisoner's protected First Amendment conduct, which (4) would chill the exercise of First Amendment rights and (5) did

not advance a legitimate penological interest. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The R&R found, and there is no objection, that Sergeant Weaver is a state actor in his capacity as a correctional officer. (*See* Dkt. No. 98 at 12.) Although Plaintiff continued to file administrative grievances after this incident, the standard for chilling is not whether a plaintiff is actually deterred—it is objective. (*See id.* at 13) (citing *Rhodes*, 408 F.3d at 569). The R&R found, and Sergeant Weaver does not object, that his threats and confinement of Plaintiff would chill First Amendment conduct by a reasonable person. (*See id.* at 13.) Therefore, the first and fourth elements of a retaliation claim are met.

1. Protected Conduct

As to the third element—protected conduct—prisoners (including pretrial detainees) have a First Amendment right to file grievances about prison misconduct. *Rhodes*, 408 F.3d at 567 (explaining that, without such a right, there would be "no viable mechanism to remedy prison injustices"). This right protects both formal and informal complaints, whether verbal or written. *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (the "'right to redress of grievances does not hinge on the label the prison places on a particular complaint'") (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009)). Here, Plaintiff was concerned that some legal mail was not being sent from KCJ. And he attempted to submit both an informal and formal grievance: he allegedly spoke to Sergeant Weaver about the mail and asked him to accept a written grievance about the same. (Dkt. No. 88-1 at 1–2.) Plaintiff's allegations, if true, describe conduct protected by the First Amendment.

Sergeant Weaver does not seriously dispute that Plaintiff was making a valid complaint or that Sergeant Weaver was aware Plaintiff was complaining. Instead, he denies knowing the contents of Plaintiff's written grievance. (Dkt. No. 101 at 4.) Nevertheless, Sergeant Weaver was aware that Plaintiff raised a concern about his legal mail—that is why he entered the unit in the first place. Even if Sergeant Weaver did not know that Plaintiff's papers contained a formal grievance, he was at least aware of the informal grievance. *Cf. Hines v. Gomez*, 108 F.3d 265,

268 (9th Cir. 1997) (finding circumstantial support for the inference that a prison guard knew of a prisoner's grievance).

Sergeant Weaver also submits that it was not his job to receive Plaintiff's grievance at that time. (*See* Dkt. No. 98 at 5.) But whether Sergeant Weaver had a role in the instant grievance process has no bearing on whether Plaintiff engaged in protected conduct, whether Sergeant Weaver knew about that conduct, or whether he could have punished Plaintiff as a result. Despite what Sergeant Weaver argues, he does not need to have "impeded or tampered with the regular process of filing grievances" for the purposes of a retaliation claim. (*See* Dkt. No. 101 at 4.) Plaintiff needs only to have engaged in conduct protected by the First Amendment prior to the adverse action. Here, he tried to lodge informal and formal grievances prior to being confined. Therefore, the third element (protected conduct) is satisfied.

    2. <u>Causation</u>

In order to satisfy the second element—causation—of a retaliation claim, the plaintiff's protected conduct must be the substantial or motivating factor behind the defendant's adverse action. *Mt. Healthy Cty. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If the defendant acted for an unrelated reason, then the result was not caused by a retaliatory motive. *Id.* at 286. On summary judgment, the nonmoving party has only to show evidence that demonstrates a genuine issue of material fact as to the plaintiff's motive. In *Brodheim*, for example, the plaintiff prisoner had to show a genuine issue regarding whether the defendant officer threatened him because he filed grievances or because he used disrespectful language. 584 F.3d at 1271. He offered evidence showing a genuine dispute, and so the Court of Appeal reversed the lower court's summary judgment. *Id.* at 1274.

Here, Sergeant Weaver initially supported his motion with his own declaration that Plaintiff was being disruptive and yelling through the passthrough. (*See* Dkt. No 79-6 at 2). But Plaintiff responded with his own declaration that he was respectful and used an intercom rather than the passthrough. (*See* Dkt. No. 88-1 at 1); (*see also* Dkt. No. 79-4 at 3) (appeal of prison

administrative grievance). Although asserted on Plaintiff's behalf, the Court need not disregard evidence at the summary judgment stage solely because it is self-serving. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). These conflicting declarations present a disputed issue of fact that is inappropriate for resolution on a motion for summary judgment.

In objecting to Judge Leupold's recommendation on this issue, Sergeant Weaver now[1] contends that this evidentiary dispute is irrelevant because it is undisputed that Plaintiff "was telling Sgt. Weaver how to do his job." (*See* Dkt. No. 101 at 2.) In other words, Sergeant Weaver still submits that Plaintiff was punished for the *way* he spoke, not what he said. (*See id.* at 3.) In the context of a prison grievance about legal mail, Sergeant Weaver offers a distinction without a difference. A prisoner who wants their mail sent only has reason to engage in the protected activity if prison officials are *not* doing their jobs correctly. Such a grievance, by its nature, is likely to tell an officer how to do their job differently. And a prisoner trying to submit a complaint in the first place is also likely to tell an officer what to do: take their grievance, as Plaintiff did in reference to KCJ policy. If prison officials were able to label a legitimate complaint an illegitimate command, then they could defeat most any attempt to exercise that right. *Cf. Brodheim*, 584 F.3d at 1271 n.4 (rejecting prison's characterization of a complaint and finding it was "part of the prison grievance process, and therefore protected activity"). The way that Sergeant Weaver and others at KCJ did their jobs is the crux of Plaintiff's grievance and complaint. The First Amendment does not impose a Catch-22 that forbids this claim, even in prison. *Cf. Rhodes*, 408 F.3d at 569 (rejecting a prison's argument that would preclude prisoners from bringing certain retaliation claims). Therefore, there remains a dispute about what caused the alleged retaliation.

---

[1] Sergeant Weaver did not articulate this argument in his motion for summary judgment, whether on the elements of First Amendment retaliation or qualified immunity. Instead, the motion referred to Plaintiff's actions in terms of "disruptive conduct" and "behavioral issues." (*See* Dkt. No. 79 at 13.)

ORDER
C23-1160-JCC
PAGE - 6

1    As such, a genuine issue of fact precludes summary judgment as to causation, *i.e.*, the
2 second element.

3                3.   Legitimate Penological Interest

4    As to the fifth element, prisons are due "'appropriate deference and flexibility' . . . in the
5 evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."
6 *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482
7 (1995)). Sergeant Weaver again tries to repackage his argument about Plaintiff telling him how
8 to do his job. (*See* Dkt. No. 101 at 3.) This is not a persuasive objection, as Sergeant Weaver
9 does not explain why Plaintiff telling him how to do his job threatened institutional order,
10 discipline, or security.[2] That leaves only the disputed disruption through the passthrough or
11 intercom, which is a genuine issue of fact also precluding summary judgment as to penological
12 interest, *i.e.*, the fifth element.

13   **C.   Qualified Immunity**

14   Finally, Defendant briefly raises the affirmative defense of qualified immunity. (Dkt. No.
15 101 at 4.) "Qualified immunity shields government officials from civil liability unless a plaintiff
16 pleads facts showing (1) that the official violated a constitutional right, and (2) that the right was
17 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731,
18 735 (2011). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the
19 party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

20   The R&R focused on the first prong because the right to be free from retaliation in filing
21 prison grievances is clearly established. (*See* Dkt. No. 98 at 12) (citing *Brodheim*, 584 F.3d at
22 1269). In the context of qualified immunity, Sergeant Weaver raises objections based on prong

---

[2] If telling a prison official how to do their job was itself disrespectful and a threat to order or discipline, then this one penological interest would defeat a wide swathe of possible grievances. *Cf. Bradley v. Hall*, 64 F.3d 1276, 1282 (9th Cir. 1995) (abrogated on other grounds) (holding that disrespectful language in a prison grievance does not justify punishment). Sergeant Weaver has not explained, nor can this Court fathom, how such a generalized interest is legitimate.

1  two, repeating that "he reasonably believed he was [confining] the Plaintiff for the way he
2  complained and not for the act of complaining." (Dkt. No. 101 at 4.) But the Court rejected these
3  arguments above and they are equally unpersuasive in the context of qualified immunity. In
4  2012, the Ninth Circuit made clear that the way a prisoner complains does not negate a First
5  Amendment retaliation claim. *See Brodheim* 584 F.3d at 1271. And in 2017 it held the right to
6  file formal or informal grievances to be clearly established; moreover, it does not turn on how
7  the prison construes the grievance. *See Entler* 872 F.3d at 1041.
8      The conduct alleged here is clearly and objectively protected. A reasonable prison officer
9  would (or should) know that punishing a prisoner for trying to file a grievance—respectfully and
10 over the appropriate intercom—was unconstitutional. Therefore, Sergeant Weaver is not entitled
11 to a qualified immunity defense at the summary judgment stage.

12 **III.    CONCLUSION**

13     For the foregoing reasons, the Court OVERRULES Sergeant Weaver's objection (Dkt.
14 No. 101), ADOPTS the R&R (Dkt. No. 98), and DENIES the motion for summary judgment
15 (Dkt. No. 79). The Clerk is directed to send copies of this Order to Plaintiff, to counsel for
16 Sergeant Weaver, and to the Honorable Grady J. Leupold.
17     Within 30 days of this order, the parties are DIRECTED to meet and confer and provide
18 the Court with a joint status report containing an estimated trial schedule (*i.e.*, number of days
19 anticipated for trial) in light of the rulings above and three alternative trial dates based on the
20 parties' availability. The Court will issue a revised scheduling order following receipt of this
21 submission.
22 //
23 //
24 //
25 //
26 //

DATED this 24th day of September 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE